# IN THE COURT OF APPEALS OF IOWA

No. 23-1123
Filed December 6, 2023

**IN THE INTEREST OF L.S. and V.S.,**
**Minor Children,**

**T.T., Mother,**
        Appellant.

_____


Appeal from the Iowa District Court for Jones County, Joan M. Black, District Associate Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Robert W. Davison, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Robin L. Himes, Cedar Rapids, attorney and guardian ad litem for minor children.


Considered by Bower, C.J., Buller, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**SCOTT, Senior Judge.**

A mother appeals the termination of her parental rights to two children, L.S., born in 2019, and V.S., born in 2019.[1]  She contends the State failed to prove the grounds for termination cited by the juvenile court, termination is not in the best interests of the children, and her parental rights should not be terminated due to the closeness of the parent-child bond.  Upon our review, we affirm.

## I.      *Background Facts and Proceedings*

This family came to the attention of the department of health and human services in spring 2021,[2] upon concerns about methamphetamine use by the mother's boyfriend, Josh, while caring for the children.  There were also concerns about a "nonaccidental" injury to L.S. reportedly caused by Josh, which resulted in a founded child abuse assessment.  Even so, the mother and the children continued living with Josh because she was unable "to secure her own housing."  Shortly thereafter, the mother reported she "lost her housing" following a domestic violence incident between her and Josh in the presence of the children.[3]  The mother requested the children be placed in foster care "as she was currently homeless, unemployed, and could not provide for them."  The children were removed from the mother's custody and adjudicated in need of assistance.

The court entered a dispositional order in October.  The mother stipulated to the children's continued placement in family foster care.  The guardian ad litem

---

[1] The father's parental rights were also terminated.  He does not appeal.
[2] The department had been involved with the family in 2020, due to domestic violence between the mother and the father.  The mother had also been involved with the department as a juvenile.
[3] Also around that time, the mother was hospitalized "due to her mental health."

reported the mother "lacked the ability to distinguish between appropriate and inappropriate caretakers for the children," noting Josh was "not an appropriate caretaker and she is living with him." The guardian ad litem further noted the mother had requested a visit to take place in Josh's home "even though she has been told that this cannot happen."

The mother gave birth to another child in April 2022.[4] She reported Josh was the father. The department continued to have "concerns of domestic violence within their relationship." The mother expressed "she fears Josh" and "struggle[s] to want to keep him [versus] not wanting to keep him around her children." The guardian ad litem observed the mother was effectively living with Josh because she was "only at her home if there are visits." The mother was aware Josh was not approved to be around the children. The mother also reported she was "struggling with her mental health," and the department assisted in arranging additional therapy and services to address those concerns. The mother's visits with the children went well, and the mother was "caring and nurturing towards her children."

Over the next few months, while the mother made "some progress," she did not "address[] the recommendations regarding her relationship with Josh" and she effectively "chos[e] her relationship with Josh over her children." The juvenile court directed the State to initiate termination-of-parental-rights proceedings.

A termination hearing took place in August. Following the hearing, the court entered an order finding despite issues remaining that were a "barrier to

---

[4] Her parental rights to that child are not at issue in this proceeding.

reunification," termination was not in the children's best interests due to the "significant" bond between the mother and the children. The court therefore ordered additional time to work toward reunification and continued the termination hearing to January 2023.

The court entered an order in February 2023 following the hearing. The court noted the mother had "made some efforts, but there continue to be concerns of domestic violence, a lack of true engagement in counseling services and inconsistent drug testing." But contrary to the department's recommendation for termination of the mother's parental rights, the court granted the mother's motion to dismiss the termination petition. The court highlighted the mother's testimony "that her relationship with Josh is over" "because she now believes that it is an unhealthy relationship." However, the court directed the State to file another termination petition.

At the next termination hearing, which took place over two days in May and June 2023, the mother acknowledged her youngest child, J.K., was removed from her care in October after a domestic incident with Josh took place and police were called. The mother acknowledged she left J.K. in Josh's care unsupervised in violation of the safety plan in that case. The mother's visits with L.S. and V.S. reverted to fully supervised. The mother testified she had decided at that point to choose her children over Josh. But she detailed numerous domestic "incident[s]" that had taken place between her and Josh since then, during which Josh assaulted her and damaged her property. She had "no clue" whether Josh had completed domestic-violence treatment. When asked at the termination hearing if they were "currently together," she answered, "Technically, yes." She further

testified, "There have not been any incidences since the last ones reported. . . . I would like to keep showing everybody that we can be good." The mother requested the children be returned to her custody.

The court thereafter entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2023) (as to V.S.) and (h) (as to L.S). The court noted the mother had "engage[d] in services during the course of these cases," she had "obtained housing," there were "no indicators that [she] had used illegal substances," and she "was very consistent in visiting with her children." But sadly, the concerns about the mother's relationship choices remained. "As a result, the Court [could] not be assured of the[] [children's] safety if returned to [her] care." The mother appeals.

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the children. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). We give weight to, but are not bound by, the juvenile court's fact findings. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

## III.    *Grounds for Termination*

Regarding section 232.116(1)(f) and (h), the mother only challenges the fourth element—whether the children could be returned to her custody. This element is satisfied when the State establishes the children cannot be safely returned to the parent at the time of the termination hearing*. In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020). On this issue, the mother claims "[t]here are minimal safety concerns regarding the children in [her]

care" and her "home was available and would have been a more than adequate placement."

At the time of the termination hearing, the children had been removed from the mother's care for nearly two years and her visits were semi-supervised. The mother maintained she would not allow Josh around the children "[i]f [the department] and the courts say no." But the mother has not heeded those instructions in the past. She also promised "if it really comes down to it, I will choose my kids." But she acknowledged she had "no clue" how anyone "could be sure of that." And she conceded she "underst[oo]d why most people still have concerns" and agreed she had given Josh "way too many more [second chances] than [she] should have." She stated this time she was "definitely putting [her] foot down."

On this issue, the juvenile court found:

> The relationship between [the mother] and Josh has been a significant issue throughout these cases. Their relationship has been violent, verbally and physically. The couple has had numerous police contacts due to the volatility of their relationship. They have been requested to participate in couples counseling since the beginning of the [child-in-need-of-assistance] cases. Josh was very reluctant to do this. While he was incarcerated, he agreed but stopped again after his release. Josh has tested positive for illegal substances, even while on work release from the jail.
> [The mother] has repeatedly stated that if she had to, she would choose her children over Josh. In reality, [the mother] has consistently chosen Josh over her children. [The mother] has her own apartment, but she rarely stays in it. She uses it primarily for visitation. At times, [the mother] claims to fear Josh and states she is in the process of leaving him. The next report will be that she and Josh are together again. There have been times during these cases that [the mother] has asked that [L.S. and V.S.] be placed with her sister permanently so she can live with Josh full-time.
> There have also been consistent reports that while Josh would like to be in a relationship with [the mother] and have J.K. returned to their care, he does not want [V.S. and L.S.] to be part of

> that family. This clearly creates a conflictual situation that is not easily remedied.
>
> It is clear that [the mother] has the ability to parent her children. There is a well reported bond between [the mother] and the children. They enjoy visits with her, they are happy to see her and are sad when the visits are over. However, it is equally clear that [the mother] is not willing or able to consistently place [L.S. and V.S.] as a priority in her life. As a result, the Court cannot be assured of their safety if returned to [the mother]'s care. The Court is unsure if this inability is related to untreated mental health issues or simply a choice she is making.

Based on these and the other facts detailed above, we concur with the court's assessment these children could not be returned to the mother's custody at the time of the termination hearing. Iowa Code section 232.116(1)(f) and (h) was satisfied.

## IV. *Best Interests*

Termination also must serve the children's best interests. *See* Iowa Code § 232.116(2); *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (observing the defining elements of the best-interests analysis are the children's safety and need for a permanent home). Contrary to the mother's claim on appeal,[5] we are convinced the evidence proved termination serves the children's best interests. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). At the time of the termination hearing, the children

---

[5] The mother blends the best-interests-of-the-children and exception-to-termination issues by claiming termination is not in the best interests of the children due to the strong bond she shares with them. As these are properly raised as two separate issues, we address the mother's claim as a challenge to both the best-interests finding and the court's declination to preserve the parental relationship with the permissive exception provided in Iowa Code section 232.116(3)(c).

had been out of their mother's custody for nearly two years. These children need and deserve permanency and stability. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (citation omitted)). Upon our review, we conclude termination serves the best interests of the children.

## V. **Parent-Child Bond**

The mother claims her parental rights should not be terminated "because of the bond" she shares with the children. *See* Iowa Code § 232.116(3)(c). Application of the exception under paragraph (c) "requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). On this issue, the juvenile court found:

> The children are three and fours years old. They have been out of the care and custody of their parents for nearly two years. . . . The mother has a strong bond with the children. However, apparently, her bond with [Josh] is more important to her. After nearly two years of services, the mother is once again on semi-supervised visitation. When an overnight visit was attempted with her youngest child, the police were called and the events of the weekend resulted in a removal. The court simply cannot continue to hope that [the mother] will make better choices for the best interest of her children. When a person shows you who they are, believe them. The Court believes that [the mother] loves her children, but will not prioritize their needs over her own wishes.

The guardian ad litem opined, "They have bonded with their mom. There's no doubt about that. They're bonded with their sibling. But I do not think that it would be detrimental to them if the termination happened." The guardian ad litem added,

"I just can't see returning them today for a period to get in their home and long enough that they probably don't have good memories of being elsewhere."

Upon our review, we conclude the mother has failed to establish termination of her rights will be detrimental to the children. We affirm the termination of the mother's parental rights.

**AFFIRMED.**